*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RASHIKA TENEE COLLIER,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No. 345826
Kent Circuit Court
LC No. 18-001809-FC

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right her conviction of one count of armed robbery, MCL 750.529. The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to 8 to 50 years' incarceration. We affirm.

This case arose as a result of a coordinated plan by defendant and her son, Dorian Collier, to rob the victim. According to the prosecution, defendant engaged in a scheme to lure the victim to her home with the intent that her son would rob the victim with a firearm after the victim left her home. Although defendant did not participate directly, the prosecution charged her as an aider and abettor.

## I. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that the trial court erred by denying defendant's motion for a directed verdict because there was insufficient evidence of defendant's guilt. Defendant was convicted of armed robbery as an aider and abettor to her son, who allegedly carried out the physical robbery. As defendant views it, the only evidence presented supporting defendant's connection to this robbery is that defendant engaged in a sexual act with the victim shortly before the robbery near her house and her connection to the alleged assailant as his mother.

> When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were

-1-

proved beyond a reasonable doubt. [*People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).]

When reviewing a directed verdict, we draw all reasonable inferences from the evidence in favor of the prosecution. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). Generally, a trial court's underlying factual findings are reviewed for clear error. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

At the close of the prosecution's proofs, defendant moved for a directed verdict of acquittal. Defense counsel's argument was cursory and did not specifically argue why the evidence was insufficient. The trial court noted that the text messages between defendant and his mother were sufficient evidence to submit the case to the jury. We begin by addressing whether this evidence was sufficient to support the prosecution's armed robbery charge. Armed robbery is comprised of two elements and the prosecution must prove:

> that (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

A defendant who aids and abets in the commission of a crime is treated for the purposes of conviction as though he or she "directly committed the offense." MCL 767.39; see *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006).

> To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. [*Carines*, 460 Mich at 757-758 (quotation marks and citation omitted).]

Viewed in the light most favorable to the prosecution, there is sufficient evidence to support defendant's conviction of armed robbery under a theory of aiding and abetting. First, the evidence was sufficient to show that Dorian committed the crime of armed robbery. The victim testified that he was walking in the street when a "tall" and "muscular" individual approached him with a gun. This assailant ordered the victim to give him money and the victim gave him a little over

$300. The victim testified that defendant was one of only two people who knew that he was at defendant's home and that she was the only one who knew when he was leaving the home. Because of this and the victim's identification of certain physical features, the victim believed that it was Dorian who robbed him. Moreover, the victim believed that he recognized Dorian as the one who robbed him because he looked at a photograph of Dorian that was hanging in defendant's home shortly before the robbery. A subsequent investigation of the scene revealed a single set of footprints in the snow leading away from the robbery location. These tracks eventually led through defendant's backyard and to Dorian. Dorian was wearing Nike shoes with the Nike swoop insignia on them. Thus, the first element is satisfied.

Second, there is sufficient evidence that defendant "gave encouragement that assisted the commission of the crime . . . ." *Carines*, 460 Mich at 757-758 (quotation marks and citation omitted). Upon defendant's arrest, the officers retrieved the contents of defendant's and her son's cell phones. In these cell phones, officers found two text messages sent on the night of the robbery. One message sent by defendant to Dorian said, "He here," and another message said, "Parking down by Ronda's old house." Officers also found calls logged within the phone showing that defendant contacted Dorian at 9:37 p.m. for 50 seconds and at 12:28 a.m. for 21 seconds. As the victim testified, only defendant knew exactly when he was leaving the home and where he parked his car. In light of this testimony and viewed in the light most favorable to the prosecution, there is sufficient evidence that "the defendant performed acts or gave encouragement that assisted the commission of the crime . . . ." *Carines*, 460 Mich at 757-758 (quotation marks and citation omitted).

Finally, there is sufficient evidence that defendant intended the commission of the armed robbery, or at least had knowledge that Dorian intended the commission of the crime and gave aid. See *id*. at 758 (quotation marks and citation omitted). There is no smoking gun supporting defendant's knowledge and intent in this case. However, "[a]n aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*. (quotation marks and citation omitted). Here, defendant and Dorian possessed a close association as mother and son. Moreover, defendant and Dorian communicated via telephone and text message both immediately before and immediately after the armed robbery occurred. The victim also noted that when he began to leave defendant's home, defendant appeared to delay him by talking to him for some time. A reasonable juror could easily conclude that defendant contacted Dorian and was told to delay the victim from leaving.

In addition, the aftermath of the assailant's flight from the scene directly tied defendant to the case. The assailant's footprints led to defendant's backyard. These tracks then led away from defendant's home and to the assailant's location and arrest. This indicates that defendant and the assailant had the opportunity to briefly contact each other. Moreover, Dorian was wearing Nike shoes that matched the assailant's footprints at the time he was arrested. By extension, it is reasonable to assume that defendant assisted Dorian in changing his clothing and concealing the firearm. This would explain why Dorian was wearing different clothing that what was described by the victim when he was arrested, and why no firearm was ever recovered. Viewed in the light most favorable to the prosecution, this evidence supports the inference that defendant contacted Dorian after the armed robbery to coordinate stories and assist Dorian in changing his clothes and

hiding some physical evidence. See *McKewen*, 326 Mich App at 347 n 1. Therefore, we conclude that there was sufficient evidence that "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." See *Carines*, 460 Mich at 758 (quotation marks and citation omitted).

## II. EVIDENTIARY ERROR

Next, defendant challenges the introduction of evidence that defendant considers either irrelevant under MRE 404(b) or speculative.

After jury selection, the trial court addressed the prosecution's proffered MRE 404(b) evidence in reference to a 2012 criminal case involving defendant. The prosecution explained that in 2012, defendant set up a drug deal with a woman named Rashonda Tyler. According to the prosecution, defendant called Tyler over to her home. Once in the home, Tyler reported that defendant was wearing a hood to conceal her face, pretended to have a gun, and demanded money or drugs. After the robbery, defendant changed her clothing "to fool the victim." The prosecutor argued that this evidence showed a common plan or scheme and, in the alternative, a lack of mistake by defendant in the instant case. The trial court permitted the introduction of this evidence after finding that this evidence was relevant for a nonpropensity purpose and was not unduly prejudicial.

The next day, the prosecution also sought the introduction of a number of text messages between defendant and Dorian as MRE 404(b) evidence. The prosecution argued that the text messages showed that defendant participated in an attempted robbery with her son two weeks before the current incident. Therefore, the text messages were admissible to show that defendant and her son possessed a common plan or scheme when conducting robberies. Defendant objected and argued that these text messages were hearsay, violated the Confrontation Clause, and were of minimal probative value. The trial court permitted the introduction of the text messages as MRE 404(b) evidence.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). Preliminary questions of law are subject to de novo review. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A trial court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012). Similarly, the admissibility of prior bad acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

Generally, all relevant evidence is admissible. MRE 402. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (quotation marks omitted). Our Supreme Court previously explained the elements of relevancy as follows: "Relevant evidence thus is evidence that is material (related to any fact that

-4-

is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *People v Sabin*, 463 Mich 43, 57; 614 NW2d 888 (2000). "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id*. (quotation marks and citation omitted). "A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy." *Id*. (quotation marks and citation omitted).

MRE 404(b) prohibits the introduction of relevant prior bad acts for the purpose of showing propensity. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"The first sentence of this rule represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Id*. However, [t]he second sentence of MRE 404(b)(1) establishes that other-acts evidence may be admissible for other nonpropensity purposes." *Id*. at 398. Our Supreme Court has explained:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

The prosecution argues that because the text messages and defendant's involvement in the 2012 incident demonstrate a distinctive scheme or plan when committing robberies, these prior bad acts were admissible under MRE 404(b). We agree with the prosecution that evidence regarding the 2012 incident was admissible under MRE 404(b). First, the evidence was offered for a proper purpose. The trial court permitted the introduction of this evidence after finding that this evidence was relevant for the nonpropensity purpose of showing defendant's common plan for executing armed robberies. This is expressly provided as a proper purpose under MRE 404(b).

Second, it is noteworthy that this evidence was material to defendant's level of intent. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Denson*, 500 Mich at 401 (quotation marks and citation omitted). Because the prosecution was required to show that defendant was aware of and gave aid to the assailant in this case, the evidence of a similar strategy for armed robbery was material to the case for the purposes of showing that defendant intended to execute this plan.

Third, this evidence was probative of defendant's strategy and plan when committing similar armed robberies. See *id*. at 402 ("In evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, we examine the similarity between a defendant's other act and the charged offense."). In both the instant case and the 2012 incident, the victims were invited to a home where defendant was waiting. In both cases, the assailants wore hoods covering their faces, used firearms or what appeared to be firearms to threaten and rob their victims, and changed their clothing immediately following the robbery.

Defendant was not charged with a crime in the 2012 incident. However, uncharged "[o]ther-acts evidence may be admissible when the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Felton*, 326 Mich App 412, 426; 928 NW2d 307 (2018) (quotation marks and citation omitted). "Mere similarity between the other-acts evidence and the charged conduct is not sufficient; rather, the effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation." *Id*. (quotation marks and citation omitted). However, "distinctive and unusual features are not required to establish the existence of a common design or plan." *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002).

The prosecution's theory of relevance based on a common plan was the similarity between the instant case and the 2012 incident. In this context, our Supreme Court has held that:

> [i]f the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a striking similarity between the two acts to find the other act admissible. When the prosecution's theory of relevancy is not based on the similarity between the other act and the charged offense, a striking similarity between the acts is not required. [*Denson*, 500 Mich at 404 (quotation marks and citation omitted).]

Initially, it is important to note that the presence of facial concealment and using firearms alone is likely insufficient to establish a common plan or scheme for the purposes of the 2012 incident. The presence of a firearm and concealing clothing in an armed robbery "is so commonplace and indistinctive that it fails to demonstrate a common scheme." *Felton*, 326 Mich App at 427. However, the bait-and-ambush style utilized by defendant does establish a common plan or scheme in the execution of an armed robbery. In this case, showing that defendant's common scheme for committing armed robbery was a bait-and-ambush style tended to rebut any argument the victim's robbery immediately after leaving defendant's home was a coincidence and tended to show defendant's intent and role as a planner of this armed robbery. "In cases in which the prosecution has relied on similarity in seeking to admit other-acts evidence, this Court and other courts have frequently prohibited the admission of that evidence under MRE 404(b) due to the dissimilarity between the other acts and the charged offenses." *Denson*, 500 Mich at 404.

Evidence of the 2012 incident was also admissible under MRE 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We conclude that the evidence of defendant's 2012 incident was relevant and the probative value was not outweighed by its prejudicial effect. Of course, all evidence of prior bad acts will be at least minimally prejudicial. However, when balanced against the highly probative value of rebutting defendant's argument that the timing of the robbery was a coincidence and showing that defendant intended to be an aider and abettor to the armed robbery, this evidence was not *unfairly* prejudicial toward defendant. See *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018) ("All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations."). Because this evidence was offered for a proper purpose and was relevant toward that purpose, the trial court did not abuse its discretion in admitting defendant's prior armed robbery.

We next address the text messages offered by the prosecution under MRE 404(b). We conclude that although the text messages between defendant and Dorian were purportedly offered for a proper purpose, the text messages were not probative of that purpose. The prosecution submitted the text messages to support its showing of defendant's common plan or scheme. This is a proper purpose under MRE 404(b), which provides prior bad acts may be introduced to show that defendant possessed a "scheme, plan, or system" in executing an action. MRE 404(b). In this case, the prosecution argued that because defendant utilized text messaging to coordinate an alleged breaking and entering of a home two weeks earlier, this supported defendant's use of text messaging during the instant offense to coordinate a robbery.

When analyzing the probative value of similar act under MRE 404(b), our Supreme Court has held that "[t]he degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Denson*, 500 Mich at 402-403. Therefore, as an initial matter, it is important to note that the prosecution explicitly relied on the similarity of plan and scheme as the basis for the introduction of these text messages under MRE 404(b).

The text messages at issue appear to describe an attempted breaking and entering that defendant conducted with Dorian roughly two weeks before the current case. In the prosecution's view, this evidence of an attempted breaking and entering was sufficiently similar to introduce as evidence of a common plan or practice applicable to the instant armed robbery. The prosecution points to the late-night nature of both of the robberies and the fact that defendant and the principal utilized text messaging to coordinate their robbery as evidence of their similarity. However, once again, the late-night nature of an alleged breaking and entering and the utilization of text messaging between defendant and her son "[are] so commonplace and indistinctive that it fails to demonstrate a common scheme." *Felton*, 326 Mich App at 427. Moreover, any similarity between the alleged breaking and entering and the current armed robbery is not the type of "striking similarity" necessary for its introduction as a similar plan or scheme under MRE 404(b). *Denson*, 500 Mich at 404 (quotation marks and citation omitted). Mere similarity is not sufficient alone to establish a common plan or scheme; rather, there "must be such a concurrence of common features that the charged acts and the other acts are logically seen as a part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009).

Although the prosecution alleges that these text messages show an attempt to commit a robbery, we conclude that these text messages, at best, show that defendant and her son attempted

-7-

to commit the crime of breaking and entering.  Compare MCL 750.115 (criminalizing the entering of a structure without permission) with MCL 750.110a (criminalizing the unlawful entering of a home with intent to commit a crime within).  There is no extrinsic evidence in the record to suggest that this alleged breaking and entering necessarily involved an attempt to steal property, involved the use of force, was criminal in nature, or actually occurred.

The lack of similarity between the two allegedly criminal acts indicates that evidence of the incident was not particularly probative toward proving a common scheme or plan.  At best, the evidence showed that defendant and her son previously committed the crime of breaking and entering together.  This is not probative toward whether defendant and her son utilized a common scheme or plan of luring a victim into an area, threatening him with a firearm, and demanding money two weeks later.  The only similarity between these two incidents is the participation of defendant and her son in potentially nefarious activity.  See *Denson*, 500 Mich at 407 ("Indeed, the only similarity between these two incidents is that both were assaults allegedly committed by defendant.  Rather than being sufficiently similar and providing a proper noncharacter purpose for admission into evidence, the incident served solely to demonstrate defendant's propensity for violence.").  The only purpose of this evidence was to show that defendant and her son were the type of people to commit crimes together.  This is impermissible.  See MRE 404(b)(1).  Therefore, this evidence was not probative toward the purpose of showing that defendant possessed a common scheme or plan in committing armed robberies and was inadmissible.  Accordingly, the trial court erred by admitting the text messages.[1]

Despite the erroneous admission of the text messages, we cannot conclude that defendant is entitled to relief, as their admission amounts to harmless error.   MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

"Under MCL 769.26, a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009).  In essence, these rules require that we refrain from reversing a conviction unless the error was prejudicial.  *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996).

---

[1] Defendant argues that the trial court also erroneously admitted testimony from Detective Baylis about why the police failed to find a firearm in defendant's home, and why a search warrant was not obtained in this case.  Defendant characterizes this evidence as speculative, and presumably challenges the admission of this testimony under MRE 602. However, defendant fails to cite any rule of evidence or any caselaw in support of her position, and therefore we deem this argument to be abandoned. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

"That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Id.*

We presume nonconstitutional preserved errors to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006). Error justifies reversal if it is more probable than not that it affected the outcome. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

In the aftermath of the assault, police followed the assailant's footprints back to defendant's home. These tracks then led away from defendant's home and to her son. The victim identified Dorian as the one who committed the armed robbery. The investigation revealed that defendant made several phone calls and text messages both before and after the robbery. One of these texts involved defendant telling Dorian where the victim was parked. When investigators asked about whether defendant made these phone calls, defendant lied and denied that she made any calls after 9:30 p.m. This physical evidence and communication are strong evidence that defendant was aware of and assisted Dorian in the commission and cover up of the crime by coordinating and communicating with him. The jury did not credit her explanations for these contacts. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses."). Moreover, defendant's denial that she made these calls supports an inference that she was aware of and participated in the robbery. "A jury may infer consciousness of guilt from evidence of lying or deception." *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008). Because this case depended heavily on defendant's credibility, her choice to deny contact with Dorian in this case weighs in favor of a finding of harmless error.

In contrast to this evidence, the text messages were relatively minimal in the context of the prosecution's entire case. The text messages only implied that defendant may have previously attempted to commit a crime with Dorian. Although the prosecution referenced the text messages in closing statements, the reference was brief and focused on defendant's plan rather than her propensity to commit crimes. It is highly unlikely that any error in the introduction of this evidence was outcome-determinative. Moreover, the trial court provided adequate instruction to the jury regarding prior bad acts evidence, and we presume that juries follow their instructions. *People v Dupree*, 486 Mich 693, 711; 788 NW2d 399 (2010) ("We presume that the jury followed the trial court's instructions."). Thus, we conclude any evidentiary error was harmless.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Elizabeth L. Gleicher