# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

FARRIN LEE FELTON,

       Defendant-Appellant.

UNPUBLISHED
October 2, 2018

No. 339589
Kalkaska Circuit Court
LC No. 17-004018-FH

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of possession with intent to deliver less than 50 grams of a controlled substance (cocaine and heroin), MCL 333.7401(2)(a)(*iv*), second or subsequent offense, MCL 333.7413(2). He was sentenced to concurrent terms of 3 to 30 years in prison. Defendant appeals, challenging the admission of MRE 404(b) other-acts evidence at trial and the scoring of offense variable (OV) 14. For the reasons set forth below, we conclude that the trial court erred in admitting the other-acts evidence and because the error was not harmless, we reverse defendant's convictions and remand the case for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The police received a tip received that an older GM Sedan, carrying three individuals, would be transporting drugs into the county. The informant, who did not testify, also notified the police that the individuals in the vehicle would be a white male, a white female, and a black male. When the vehicle was spotted, Deputy Paul Belanger initiated a traffic stop. The three individuals were identified as Gary Johnson (white male), Darlene Keaton (white female), and defendant (black male). Johnson was driving, Keaton was in the other front seat, and defendant was in the backseat. Keaton, who owned the car, gave consent for a drug-sniffing dog to search the vehicle. Although the dog indicated at the center console, a search revealed no drugs in the vehicle. The police arrested Johnson for driving on a suspended license. After Johnson was

transported to jail, he was searched, and jail personnel found a paper bag in his underwear. The bag contained several small baggies, some containing cocaine, and some containing heroin.[1]

Johnson was originally charged with two counts of possession with intent to deliver less than 50 grams, a 20-year offense. He agreed to testify against defendant in exchange for a reduction in those charges to simple possession and sentencing under MCL 333.7411 such that upon successful completion of a term of probation, the charges against him would be dismissed without an adjudication of guilt.

At trial, Johnson testified that he was an opiate addict, and that he agreed to work with defendant to sell heroin and crack in Kalkaska in exchange for drugs. According to Johnson, he met defendant in Detroit, where defendant obtained the drugs and they returned together to Kalkaska to sell them. Johnson testified that his role was to line up potential buyers since defendant did not know anyone in the area. He stated that the drugs were found on him rather than defendant because when they passed a state trooper and a truck pulled up behind them, defendant passed him the drugs to hide, and that he put them in his underwear.

Defendant testified in his own defense. He stated that the only reason he was in the vehicle on the night in question was because he had asked Johnson to "get me away from the city." He maintained that he did not know that there were drugs in the vehicle and that Johnson's testimony was a lie.

Over defendant's objection, the trial court allowed the prosecution to introduce other-acts evidence through the testimony of two witnesses: Scott Blackwell, a retired narcotics detective, and Dylan Caswell, an illegal drug user. They testified to separate events.

Blackwell testified to an incident that occurred in August of 2013. According to Blackwell, a confidential informant told him that defendant was selling drugs in Macomb County, specifically in Chesterfield Township. Blackwell made contact with defendant, and recovered narcotics from him. He testified that when this occurred, defendant was in a vehicle that he did not own and that he was not driving. According to Blackwell, defendant admitted that he was distributing drugs in the Chesterfield area.[2]

Caswell testified that a few days before the events of the instant case, he purchased drugs from defendant. He testified that he asked Johnson for drugs and that Johnson told him about a house where he could obtain them. He then went to the house where he purchased crack cocaine

---

[1] Although the timing is not clear from the record, the police also discovered that Keaton was in possession of a crack pipe.

[2] Defendant's conviction by plea arising out of this arrest was not introduced.

from defendant. According to Caswell, defendant told him that the crack was from "[d]ownstate."[3]

Whether Caswell and Blackwell should be permitted to testify was the subject of a hearing the day before trial. Defendant argued that the prosecution had failed to give timely notice as required by MRE 404(b)(2), and that the testimony did not meet the substantive requirements of MRE 404(b)(1).

Defendant was charged on January 17, 2017. Trial was scheduled for June 20, 1017. The scheduling order set a final pre-trial conference for June 6, 2017, and ordered that, "trial counsel shall have provided the following to the Court and opposing counsel **prior** to the conference: . . . Final witness and exhibit lists" (emphasis in original). The prosecution filed a timely witness list, but neither Caswell nor Blackwell was on it. At the June 6, 2017 final pre-trial conference, the prosecution gave no indication that it intended to amend its witness list or to seek admission of MRE 404 evidence.

Two days later, on June 8, 2017, twelve days before trial, the prosecution filed an amended witness list adding Blackwell and Caswell, and filed a notice of intent to introduce MRE 404(b) evidence through Blackwell. The notice of intent did not reference Caswell or the nature of his testimony. On June 16, 2017, defendant served an objection to the notice of intent and a motion to strike Caswell from the witness list.[4] On the same day, the prosecution filed a response in which, for the first time, it indicated that Caswell's testimony would constitute MRE 404(b) evidence.

The court heard arguments on June 19, 2017, the day before trial. The prosecution argued that good cause for late notice existed because, (a) it took multiple phone calls to reach Blackwell because he had retired from the sheriff's department, and (b) Caswell was not available to be interviewed until after his own sentencing on June 6, 2017, for a drug conviction. The defense responded that Blackwell's intended testimony concerned a four-year-old prior conviction for a drug sale, a conviction which was known to the prosecution at the outset of this case as demonstrated by the fact that it was included in the Information as the basis for the second-offender charge. As to Caswell, defense counsel stated that even as of the day before trial, he had not been provided with the police report concerning Caswell. He also argued that the prosecution's explanation that Caswell would not speak with the prosecution until after his sentencing was "disingenuous because much like every other plea that's related to a drug-related crime, most times it's [sic] part of a proffer wherein they can talk to the defendant about

---

[3] Defendant testified that he had never met Caswell and did not know him. He stated that he was not in to Kalkaska County on the day Caswell testified that he was. Defendant testified that the last time he went to Kalkaska was in June 2016. When asked why Johnson's and Caswell's stories matched up, defendant opined that the two men had talked and aligned their stories about him.

[4] Actually, defendant filed a "notice of intent to strike proposed witness, Dylan Caswell," rather than a motion because the motion deadline had passed.

whatever it is that [he] may or may not know about. . . . That's usually how it works in terms of working on a resolution. You are interviewed by the police. You tell them whatever information it is that you had."

The trial court ruled that "for the reasons stated by the Prosecutor, and based on the lack of any evidence to the contrary, the Court finds that these are circumstances which the Prosecutor has discovered since the expiration of [the deadlines] and that the People raised them as an issue as soon as they could after discovering the grounds for testimony of both these witnesses, as well as for adding Mr. Caswell as a witness in the first place." The trial court also ruled that the testimony of Blackwell and Caswell met the substantive requirements of MRE 404(b) because they were relevant to

> a common scheme or plan in carrying out these transactions . . . [i]n light of the defense that [defendant] was simply in the car during this incident and not part of any drug transaction. . . . And I think the testimony of both of these witnesses goes to a material issue and it's likely to be probative on that issue of whether or not he has, in the past, conducted transactions for sales of drugs in a similar way under similar circumstances."

The court concluded that the testimony was not unduly prejudicial so as to require exclusion under MRE 403, and that it would provide a limiting instruction to the jury before each witness testified and in final instructions.

## II. STANDARD OF REVIEW

Our review is governed by the following standard:

> A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion. However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. [*People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017) (citations omitted).]

## III. ADMISSION OF OTHER-ACTS EVIDENCE UNDER MRE 404(b)

### A. PROCEDURAL REQUIREMENTS – MRE 404(b)(2)

Before being allowed to introduce evidence of prior bad acts under MRE 404(b), the prosecution must provide timely notice to the defense as defined by MRE 404(b)(2). Evidence of prior bad acts may not be admitted unless the prosecution "provide[s] written notice at least 14

days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown."[5]

It is undisputed that "written notice" was not timely provided to defendant and that "oral notice on the record" was not provided until one day before trial. The question then is whether the trial court erred in admitting the evidence despite the untimely notice, i.e., whether there was good cause to excuse the non-compliance.

As the Supreme Court stated in *People v Jackson*, 498 Mich 246, 261; 869 NW2d 253 (2015), there are three underlying purposes of the rule that we should consider when reviewing a claim of good cause for a failure to comply with the rule:

> Requiring the prosecution to give "pretrial notice of its intent to introduce other acts evidence at trial" is designed to "promote[] reliable decision making," to "prevent[ ] unfair surprise," and to "offer [] the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice." [Citations omitted.]

It is clear that the late notice in this case did "unfair[ly] surprise" defendant and did not provide him with time to "marshal arguments regarding both relevancy and unfair prejudice."[6] Defense counsel was not aware of the prior acts testimony to be offered by Blackwell until 12 days before trial, and was unaware of the content of Caswell's testimony until it was described at the hearing the day before trial. Defense counsel fairly stated the problem at that hearing when he told the court,

> So it just blows my mind that we're going to have a trial tomorrow and all these things are coming up when we have all this time to set up whatever your case is going to be. And now I have to consider these other things when I'm more concerned about the facts that were in front of me before, and now they're trying to add all these other things . . . .

---

[5] MRE 404(b)(2) reads in full:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

[6] For the reasons set forth below in our discussion of MRE 404(b)(1), we find that the evidence in question did not promote reliable decision making and even if it did to some degree, the circumstances of the other two factors require exclusion.

As to Blackwell, the trial court concluded that the claimed difficulty in contacting Blackwell sufficed. We disagree. First, as defense counsel argued below, the prior bad act in question was a drug offense committed in August 2013, and it is undisputed that the prosecution was aware of his conviction for that crime at the time the Information was filed. Therefore, the prosecution's statement at the hearing that "we did not know [the prior bad act evidence] existed" holds no weight and appears to have been hyperbole. Moreover, the prosecution's claim that it did not have the police report from the 2013 crime until the day before it filed the MRE 404(b) notice is not adequate to show good cause. The prosecution argued that it tried to obtain the report by calling the relevant police department in early June, and that it took many calls to get a response. However, no efforts were made during the six months between the filing of the Information and defendant's June 20 trial. There is no basis on the record to conclude that over a six-month period, the prosecution, with reasonable diligence, could not have obtained the report from either the Macomb County police or the Macomb prosecutor's office. The same is true as to the whereabouts of Blackwell. The prosecution suggested that because Blackwell was retired, the police department he served in no longer had his telephone number. However, it conceded that no other efforts were made to obtain his address or other contact information took place until the day the MRE 404(b) notice was filed.[7] Moreover, knowledge of Blackwell's whereabouts was not a prerequisite to filing a 404(b) notice. If after filing the notice Blackwell could not be located, the prosecution could simply forego calling him as a witness.

Similarly, the prosecution did not show good cause for failing to file a 404(b) notice as to Caswell. The prosecution argued that it could not have done so because it had been unable to interview Caswell until June 7, 2017, when he pleaded guilty in his drug case. Caswell was charged in January 2017, with conspiracy to deliver heroin under 50 grams, illegal use and sale of a financial transaction device, and driving without insurance. However, he was permitted to plead to a possession-only charge with sentencing under MCL 333.7411 in exchange for cooperating with law enforcement, which strongly suggests that the prosecution was aware of his potential testimony at an earlier time. Even assuming that the prosecution did not learn that Caswell could provide useful testimony until the day before the prosecution added him to the witness list, it failed to indicate that his testimony would concern prior bad acts. The first time the prosecution advised the defense that Caswell would provide other-acts evidence was on Friday, June 16, 2017, four days before trial with an intervening weekend, and the substance of that testimony was not actually articulated until the hearing the day before trial. A basis for defense counsel's objection to the addition of Caswell as a witness was that Caswell was not a witness to anything concerning the events of defendant's arrest, that he "was not present at the time of the stop or arrest," and that "[t]he police reports, the complaint, information . . . are devoid of any reference to Dylan Caswell." It was only in response to this objection that the prosecution explained the general content of Caswell's expected testimony, i.e., that it was 404(b) evidence of a separate drug sale.

---

[7] As the defense argued at the hearing, "I find [that explanation] to be highly problematic, especially considering he's involved with law enforcement, and you have the entire Kalkaska County Sheriff's Office and MSP at your disposal, why you're unable to obtain a report is very questionable to me or how that takes so long."

The prosecution provided a second explanation, i.e., that it had not known that it needed Caswell's testimony because it had another witness who would have offered that testimony, but who had taken flight. This argument carries little weight since no MRE 404(b) notice was ever filed for this witness either.

The trial court's error may have resulted from its confusion about which party had the burden to establish that admission was proper. The court stated, "For the reasons stated by the Prosecutor, and based on the lack of any evidence to the contrary, the Court finds that these are circumstances which the Prosecutor has discovered since the expiration [of the 404(b)] notice deadline] and that the People raised them as an issue as soon as they could after discovering the grounds for testimony." In so reasoning, the court improperly put the burden on the defendant to produce evidence while it accepted the prosecutor's statements—that were wholly unsupported by any evidence—as conclusive. This is of particular concern given the fact that the defense was only alerted to the need to look into the prior act evidence a few days before and had still not been provided with the 2013 police report, a document the prosecution had six months to locate.

Accordingly, we conclude that the other-acts evidence was procedurally inadmissible.

## B. SUBSTANTIVE REQUIREMENT

Defendant next argues that the trial court abused its discretion in admitting the testimony of Caswell and Blackwell because the other acts they described were dissimilar to the charged offense and because this evidence was unfairly prejudicial. We agree.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

It is a "deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *Denson*, 500 Mich at 397. "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond reasonable doubt of the crimes charged." *Id*. Admission of other-acts evidence involves four considerations:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), quoting *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993).]

According to the Supreme Court:

[A] common pitfall in MRE 404(b) cases is that trial courts tend to admit other-acts evidence merely because the proponent had articulated a permissible purpose. The mechanical recitation of a permissible purpose without explaining how to evidence relates to the recited purpose[], is insufficient to justify the admission under MRE 404(b). It is incumbent on a trial court to vigilantly weed out character evidence that is disguised as something else. In other words, merely reciting a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible. Rather, in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test. [*Denson*, 500 Mich at 400 (quotation marks and citations omitted).]

Thus, the prosecution "bears the burden of establishing" "a proper non-character purpose for the admission of the other-acts evidence." *Denson*, 500 Mich at 398. "MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question." *Id*. Other-acts evidence may be admissible when "the uncharged misconduct and the charged offenses are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Mere similarity between the other-acts evidence and the charged conduct is not sufficient; rather, "the effort is to establish a definite design or system which included the doing of the act charged as part of its consummation." *Id*. at 64 (quotation marks and citation omitted).

The other-acts testimony from Blackwell did not define a definite design or system. The June 8, 2017 notice of 404(b) evidence stated that Blackwell would testify as to a prior incident in which defendant, "A. Was in possession of heroin. B. Was selling it to other individuals, [and] C. Utilized a separate individual and their vehicle to drive him around and assist him with the sale of illegal drugs." The first two reasons are clearly insufficient as they amount to nothing more than propensity evidence, i.e., defendant sold drugs before, and so he likely was selling them now.

The third factor was not established. Blackwell testified that in 2013, he arranged a controlled buy from defendant and found crack cocaine on him. According to Blackwell, defendant was in a car owned and driven by someone else. There was no evidence that the driver was involved in recruiting buyers or doing anything other than driving.[8] The mere fact

---

[8] In opening statement the prosecutor told the jury that the 2013 incident involved defendant using the driver "to hook him up with people who needed heroin in the area." However, no evidence supported that claim.

that defendant possessed drugs in a vehicle driven by someone else is not sufficient to establish a common plan or scheme. First, being a passenger in a car owned by another is so commonplace and indistinctive that it fails to demonstrate a common scheme. See *Sabin (After Remand)*, 463 Mich at 64-65 (requiring "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations") (quotation marks and citation omitted). Second, in the incident described by Blackwell, defendant had the drugs on his person, and admitted that they were his; a fact which supports, if anything, the notion that defendant did not have a practice of having others carry his drugs. The incidents are also inconsistent in that the 2013 case involved selling drugs directly out of a vehicle and it had occurred downstate.[9]

A common scheme or plan was also not established as to the testimony of Caswell. He testified that a few days before the events in this case, he asked Johnson for drugs, and Johnson gave him the address of a house where he could obtain them. Caswell stated that he went to the house and purchased drugs from defendant who told him that the drugs were from downstate. This evidence supported the conclusion that defendant was a drug dealer with contacts in Southern Michigan, but it did not demonstrate a common plan or scheme in relation to the instant charges. Notably, Caswell did not testify that defendant had a third party carrying the drugs or that Johnson was present or that a vehicle was involved; to the contrary, he testified that defendant was in possession of the drugs and sold them to him directly.[10] In addition, Caswell testified that he approached Johnson and asked where he could purchase drugs; there is no evidence that Johnson sought Caswell out in order to solicit sales. Moreover, the testimony does not indicate that Johnson accompanied Caswell when he went to purchase the drugs or that he took any other action to facilitate the transaction.

The overwhelming effect of the prior-bad-acts testimony in this case was the inference that defendant had a propensity for distributing drugs, i.e., that because defendant sold drugs in the past, he was acting in conformity with that propensity when he was in the car with Johnson who had drugs on him. This is precisely the inference forbidden under MRE 404(b). Thus, the probative value of the other acts evidence was substantially outweighed by unfair prejudice to defendant. The prosecution's case, based only on the facts concerning the instant charge, was far from compelling: drugs were not found on defendant's person, and Johnson—the sole witness who supported the prosecution's theory—was subject to impeachment given that he received a highly favorable plea deal in exchange for his testimony. However, by showing the jury that defendant had been involved in drug sales several times before, the jury could conclude, on that

_____

[9] The prosecution argues that the fact that the 2013 incident occurred outside of Wayne County, defendant's county of residence, shows a pattern consistent with the instant case. However, the 2013 incident occurred in Macomb County, a county adjacent to Wayne, and so has little connection to the claim here that defendant traveled all the way to Kalkaska in order to find customers.

[10] There is nothing in the record to suggest that defendant was charged in connection with the alleged sale to Caswell.

basis, that he was very likely to have been guilty even though he had no drugs on him when arrested. The prosecution used the other-acts evidence to argue that defendant was guilty in this case because he had sold drugs in the past. Specifically, the prosecutor argued in closing,

> How do we know that he was mixed up in that kind of stuff? Aside from the evidence you heard up here. Oh, wait he sold the exact same drugs [to Blackwell] a few years before. The exact same drugs. Clearly, he has a method of getting them. He got them before. Clearly, he has an in with somebody who can provide these drugs. Gary Johnson testified to all of this, and the testimony was confirmed by Dylan Caswell. What did he do with the illegal drugs just days before the arrest in this case was made? He sold them [to Caswell].

The prosecutor went on to argue that the real possessor of the drugs was defendant rather than Johnson or Fenton because: "Do they have a lengthy criminal history? Have they sold drugs before? No. Had the Defendant. Yes he has." This is plainly an appeal for the jury to consider the prior-bad-acts testimony for propensity purposes. The prosecutor also referred to Blackwell's testimony stating, "We brought a detective from downstate who said he sold these same drugs in the past, the common scheme." Again, he also stated, when addressing the fact that no drugs were found on defendant, "Oh, wait. He sold the exact same drugs a few years before. The exact same drugs. Clearly he has a method of getting them. He got them before." We decline to find that the similarity of the drugs sold, unless of some unusual or unique type, constitutes a common scheme for purposes of MRE 404(b). Sadly, heroin and cocaine are neither unique nor unusual street drugs, nor are they in fact, as the prosecutor repeatedly represented to the jury, "the same."

The prosecution's argument directed the jury to improperly consider the prior-bad-acts evidence and from that evidence the jury could readily conclude that because defendant had sold drugs on two prior occasions, he was a drug dealer, and therefore, likely to have been in possession of the drugs even though the drugs were found hidden in Johnson's underwear.

For these reasons, we conclude that the prior-bad-acts evidence was substantively inadmissible.

C. HARMLESS ERROR

Having concluded that the introduction of the other-acts evidence in this case was procedurally and substantively erroneous, we must consider whether the error was harmless. In applying the harmless error review, "[w]e focus[] on the nature of the error and assess[] its effect in light of the weight and strength of the untainted evidence." *Denson*, 500 Mich at 409. Without the improperly-admitted testimony, the case against defendant rested exclusively on the testimony of Johnson. That testimony was self-serving, and Johnson's credibility was far from sterling given his initial statement to the police that he did not have drugs in his possession only to have them found later at the police station.

As noted by the Supreme Court, "other acts evidence carries with it a high risk of confusion and misuse. When a defendant's subjective character [is used] as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative

value of the evidence." *Denson*, 902 Mich at 410 (quotation marks and citations omitted). The Court went on to state that when such evidence is admitted, "[t]he risk is severe that the jury will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again." As described in *People v Allen*, 429 Mich 558, 568; 420 NW2d 499 (1988), character evidence

> presents three types of impropriety. First, that jurors may determine that although defendant's guilt in the case before them is in doubt, he is a bad man and should therefore be punished. Second, the character evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no "innocent" man will be forced to endure punishment. Third, the jury may determine that on the basis of his prior actions, the defendant has a propensity to commit crimes, and therefore he probably is guilty of the crime with which he is charged. All three of these dimensions suggest a likelihood that innocent persons may be convicted. [(Quotation marks and citation omitted).]

Given the closeness of the properly admitted evidence and the "substantial danger" posed by character evidence to the trial process, we conclude that the error in this case was not harmless.[11]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[11] Because of our decision we need not reach defendant's claim of sentencing error.