*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 23, 2020

Plaintiff-Appellee,

v

Nos. 341041; 348477
Bay Circuit Court
LC No. 15-010218-FH

KEVIN JOHN RIEMAN,

Defendant-Appellant.

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

In Docket No. 341041, defendant appeals as of right his jury trial convictions of embezzlement by an agent of property having a value of at least $20,000 but less than $50,000, MCL 750.174(5)(a), forgery, MCL 750.248, and uttering and publishing, MCL 750.249. The trial court sentenced defendant to five years of probation. In Docket No. 348477, defendant appeals by leave granted[1] the trial court's postjudgment order denying defendant's request for a show-cause hearing related to a previously issued subpoena. We affirm in both cases.

Defendant was a licensed attorney from November 1991 until his disbarment after the January 2017 guilty verdicts in this case. The jury found defendant guilty of embezzlement, forgery, and uttering and publishing in connection with his misappropriation of $49,942 from his client, Troy Dybas. Specifically, defendant was found to have signed Dybas's name to a $49,942 check made payable to Dybas and deposited the funds into his own account, all without Dybas's permission. In addition to defendant's actions pertaining to Dybas, the prosecutor introduced evidence under MRE 404(b)(1) of defendant's actions with two other clients, Susan Damm and Erica Robinson, where he similarly signed checks on their behalf and deposited the funds into his own personal account without their authorization.

---

[1] *People v Rieman*, unpublished order of the Court of Appeals, entered June 12, 2019 (Docket No. 348477).

-1-

Dybas and defendant had entered into a standard one-third contingency agreement when they met the first time, more than a year before Dybas's civil trial started. At his trial in this case, defendant claimed that Dybas had signed another agreement a few days before Dybas's civil trial was to start, which allowed defendant to sign checks on Dybas's behalf and allowed defendant to borrow that money. Specifically, defendant testified that he had hand written the following terms on the then-existing retainer agreement and slid it across to Dybas:

> [A]ttorney to sign all documents and checks for client, and retain all money recovered for 5 years at 5 percent I.[2] Client may give 30 days written notice to receive money at any time.

Although defendant never orally explained to Dybas the new terms he was proposing, he nonetheless claimed that Dybas understood the terms and signed and initialed the agreement. Defendant could not produce a signed version of this agreement at trial. Defendant claimed that it was stolen or taken by his former law partner, Matthew Reyes, and Reyes's wife Carol.

However, Dybas repeatedly testified that he never signed any document related to his civil case, other than the initial retainer agreement. At trial, defendant relied on an affidavit that Dybas had signed,[3] in which Dybas averred, in pertinent part:

> 5. On one occasion just before my trial, I signed an attorney fee agreement with Mr. Rieman. It was on a preprinted form, and Mr. Rieman wrote additional details of our agreement on the form before having me sign and date this agreement. This occurred more than 6 years ago. I honestly do not recall what the agreement stated, or if I even read it carefully. I do not recall if Mr. Rieman gave me a copy of this agreement to take with me when I left his office.

> * * *

> 10. Looking back, I realize there could have been a great deal of confusion and miscommunication between myself and Mr. Rieman, from Mr. Rieman's perspective. I did not pay a great deal of attention to the details in the attorney fee agreement discussed above. I do not know whether the agreement granted Mr. Rieman permission to sign my name/signature to case documents, including checks, and to personally use my case proceeds for a period of time; if I had read the statement of permission granting such power, I would not have signed the same.

---

[2] Defendant explained that "I" stood for "interest."

[3] The affidavit was signed and notarized on December 28, 2016, about a month before defendant's criminal trial started. Dybas testified that shortly before this date, he received $49,942 from defendant, who requested him to sign the affidavit "in return." On cross-examination, Dybas stated that the agreement to obtain the $49,942 was not contingent on defendant approving the content of the affidavit.

Defendant claimed that this affidavit supported his contention that there were extra terms to the contract that Dybas had signed, which proved that defendant had added these loan terms to the agreement, even though Dybas could not recall what those terms were. In sum, defendant contended that he legally signed the $49,942 check that was made payable to Dybas and legally kept the money for himself (as borrowed money) as part of their agreement.

The jury found defendant guilty on all counts.

## I. DOCKET NO. 341041

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his convictions. Specifically, defendant maintains that there was insufficient evidence to show that Dybas had not agreed to allow defendant (1) to sign checks on his behalf and (2) to use the money that Dybas was due. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo by viewing the evidence in a light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (citation omitted).

Embezzlement by an agent or employee, MCL 750.174, has the following elements:

(1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal. [*People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted).]

Defendant also was convicted of forgery, MCL 750.248, which has these elements:

(1) an act which results in the false making or alteration of an instrument (which makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure. The key is that the writing itself is a lie." [*People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013) (quotation marks and citation omitted).]

The elements of defendant's third conviction, uttering and publishing, MCL 750.249, are "(1) knowledge on the part of the accused that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment." *Johnson-El*, 299 Mich App at 652 (quotation marks and citation omitted).

Defendant argues that the evidence was insufficient to prove that he had the requisite *mens rea* for these crimes. He claims on appeal, as he did at trial, that because Dybas did not know whether the contract he signed contained defendant's hand-written terms pertaining to the loan agreement, the prosecution necessarily failed to prove that defendant acted with an intent to deceive or steal. The prosecution does not contest, and we agree, that if defendant had acted under a reasonable belief that he had permission to sign documents on behalf of Dybas and had permission to use Dybas's funds himself, then he would not be guilty of the charged crimes. Contrary to what defendant argues, however, there was sufficient evidence to enable the jury to find that the alleged loan agreement on which defendant relies never existed.

Defendant presented evidence through his own testimony that Dybas had signed a new agreement containing the loan's terms just a few days before Dybas's civil trial started. But Dybas testified that he never signed any document that close to his trial. Instead, Dybas testified repeatedly that the only document he ever signed in relation to his civil case was the initial retainer agreement, which was executed more than a year before the civil trial started (and before the complaint was filed).

Defendant's reliance on potentially conflicting evidence in the form of Dybas's affidavit as a basis for challenging the legal sufficiency of the evidence is misplaced. In Dybas's affidavit, he stated that he signed an agreement "[o]n one occasion just before my trial."[4] Assuming that something happening "just before" an event could not correlate to it happening more than a year before that event, the evidence did not preclude the prosecution from establishing defendant's guilt. The jury was free to believe or disbelieve any part of Dybas's statements[5]; likewise, the jury was free to believe or disbelieve any portion of defendant's testimony. See *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008). When reviewing the sufficiency of the evidence, all conflicts in the evidence are to be resolved in favor of the prosecution. *Wilkens*, 267 Mich App at 738. Although Dybas could not recite or recall the terms of the fee agreement he did sign, the evidence, viewed in a light most favorable to the prosecution, allowed the jury to find that the fee agreement that he signed could not have contained any of the hand-written terms for the loan

---

[4] The trial court admitted the affidavit as substantive evidence and not merely impeachment evidence.

[5] Indeed, there were ample reasons for the jury to not accept at face value what was stated in the affidavit. First, Dybas testified that he had to submit the affidavit "in return" for getting his $49,942 back from defendant. This would tend to show that Dybas may have been more concerned with getting his money back than with the specific content of the affidavit. Second, the jury could have inferred that defendant had a hand in drafting the affidavit, given that defendant requested the affidavit, and there was no rational reason why Dybas would even think to include some of the information that was contained in the affidavit without defendant's urging. Indeed, Dybas was under the impression that the affidavit was a result of negotiations between his new attorney, whom he had hired to get the money back, and defendant. Third, Dybas testified that despite the "just before my trial" language in the affidavit, he was referencing the initial fee agreement he signed with defendant. Therefore, the jury had plenty of logical and rational reasons to not accept many of the assertions in the affidavit.

-4-

agreement, which allegedly were added shortly before Dybas's civil trial. Again, the only evidence to support the existence of any loan agreement shows that it would have been contained in a document that had been executed after the initial fee agreement, but Dybas emphatically testified there was no subsequent document. Further, Dybas testified at trial that his statements in the affidavit referred to the contract he signed the first time he met defendant. Consequently, the evidence was sufficient to enable the jury to find that there was no loan agreement, and accordingly, defendant did not act with permission when he signed documents on Dybas's behalf and did not have permission to take and use Dybas's money.

## B. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred by admitting evidence of other acts related to defendant's past clients, Erica Robinson and Susan Damm.[6] We disagree. We review a trial court's decision whether to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). But issues related to preliminary questions of law, such as whether a rule of evidence precludes admission of evidence, are reviewed de novo. *Id*.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identify, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b)(1) "represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). The list of permissible purposes in MRE 404(b)(1) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Indeed, a proper purpose simply is one other than establishing a defendant's character to show his propensity to commit the charged offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005).

In order for other-acts evidence to be admissible, the following test must be satisfied: (1) it must be offered for a proper purpose, i.e., a reason other than to show character or propensity; (2) the evidence must be relevant; (3) the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *Sabin*, 463 Mich at 55-56.

---

[6] Although defendant refers to a denial of his 14th Amendment due-process right to a fair trial in his statement of the question presented for this issue, his substantive argument is strictly related to whether the trial court abused its discretion when it admitted the other-acts evidence under MRE 404(b)(1). Defendant does not otherwise argue how his constitutional rights were violated. Defendant's failure to brief the constitutional issue results in that aspect of the issue being abandoned. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

In seeking the admission of the other-acts evidence, the prosecution stated that the purpose of the evidence was to establish (1) defendant's intent to defraud or cheat, (2) the lack of mistake or innocent justification, and (3) a common scheme or system. Because these are nonpropensity reasons, they are proper purposes under MRE 404(b)(1). See *Johnigan*, 265 Mich app at 465.

Defendant's argument that his intent was not at issue because he never denied signing the check that was payable to Dybas and he never denied using the money for his own purposes is without merit. Although defendant's intentional signing of the check and using the money were not seriously disputed at trial, whether defendant acted with the intent to defraud or deceive was *the* paramount consideration at trial. Defendant seems to conflate the *actus reus* of the underlying crimes with *mens rea*.

Defendant also suggests that it was improper for the evidence to be offered to show the absence of accident or mistake because he never presented that as a defense. Defendant does not cite any authority that requires the prosecution to wait for the defense to raise that defense. Indeed, "[b]ecause the prosecution must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant disputes or offers to stipulate any of the elements, the elements of the offense are always 'in issue' and thus material." *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998).

While defendant acknowledges that evidence of other acts may be used to prove a common plan or scheme, he contends that such usage in this case was improper because there were "stark differences" between the facts concerning his representation of Dybas and the facts concerning his representations of Robinson and Damm. We disagree.

Our Supreme Court has stated that "[i]f the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a 'striking similarity' between the two acts to find the other act admissible." *Denson*, 500 Mich at 403. The situations involving Robinson and Damm were indeed "strikingly similar" to the facts concerning defendant's representation of Dybas. In all three instances, defendant was the attorney or agent for these clients, and each client initially signed a retainer agreement, allowing defendant to keep as an attorney fee one-third of any sums recovered. In the situation involving Robinson, defendant alleged that, as part of a subsequent agreement, he was allowed to sign Robinson's name to the settlement check and keep those funds for himself. Further, this subsequent agreement never was produced, because defendant claimed that Reyes and Carol had taken or stolen it. With respect to the situation involving Damm, defendant alleged that he was allowed to keep part of the funds that were owed to her because she had agreed to allow him to sign her check and to keep that money in furtherance of attorney fees that were owed for a different matter. Again, no written agreement was ever produced to show that Damm had given such permission. Like Dybas in this case, Robinson and Damm both denied the existence of any subsequent agreement with defendant.

Defendant's attempt to distinguish these cases on the basis of the nature of the underlying civil claims completely misses the mark. Whether defendant was representing his clients in a no-fault context, tort, or conservatorship is irrelevant to how he handled funds that were due his clients. The fact that defendant asserted different rationales for keeping his clients' funds also does not impact how these cases were strikingly similar. What is pertinent is that in each case, he came up with a "justification" for holding onto the client's money—what that actual justification

was simply was not material. Again, the salient similarities, which make all these situations strikingly similar, include that defendant signed checks on behalf of his clients, kept the money for his own purposes, and afterward tried to justify his retention of the money by saying that the client had authorized him to do so, despite there being no written agreements to support his positions.

Defendant also asserts that the evidence should have been excluded under MRE 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In making his argument, defendant relies on his prior position that the other-acts evidence was impermissibly used as propensity evidence. However, as already discussed, the evidence was properly offered for nonpropensity purposes, including to show a common plan or scheme. This is distinguishable from the situation in *People v Felton*, 326 Mich App 412; 928 NW2d 307 (2018), which defendant cites, because in *Felton* the other-acts evidence was so dissimilar to the circumstances concerning the charged offense of dealing drugs, they did not tend to show a common plan or scheme. *Id*. at 427-428. In *Felton*, the Court determined that the initial requirements of MRE 404(b)(1) had not been satisfied, on account that the "overwhelming effect" of the other-acts evidence was to simply show that the defendant had a propensity for distributing drugs, and therefore its probative value necessarily was outweighed by unfair prejudice. *Id*. at 428-429. Because the other-acts evidence in the present case was admissible for a proper purpose, and was probative of material issues in the case including defendant's intent, we reject defendant's argument that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice.

Therefore, the trial court did not abuse its discretion when it allowed the admission of the other-acts evidence in this case.

## C. DUE-PROCESS RIGHT TO MATERIALS

Defendant argues that he was denied his right to due process by the failure of the prosecution and Det. Brian Berthiaume, the officer in charge, to produce documents that had been requested at multiple times. We disagree.

"A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about defendant's guilt." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005); see also *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In order to establish such a due-process violation, a defendant must prove the following: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Favorable evidence is evidence that is exculpatory or impeaching. *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." *Black's Law*

*Dictionary* (11th ed). And "[t]o establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Chenault*, 495 Mich at 150, quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

Defendant had sought the production of documents pertaining to other clients of his, namely Larry Houthoofd, Regina Collins, and Maureen Truckner. However, defendant's right to due process is only implicated if these materials, assuming they were suppressed, were exculpatory or impeaching. *Strickler*, 527 US at 281-282. When pressed by the trial court to explain how these materials were exculpatory, defendant could not provide an adequate answer. Instead, he seemed to suggest that the requested materials would show that he had modified contract agreements with these other clients, which would support his view that he had altered the Dybas contract in the instant case. The prosecutor argued that the fact that defendant "didn't cheat another client . . . is not germane to this proceeding." The trial court agreed with the prosecutor, stating that disclosure of these materials was not required because the materials did not implicate any of the alleged prior bad acts in this case (defendant's interactions with Robinson and Damm), or the case in question (defendant's interactions with Dybas).[7]

We agree with the trial court. On appeal, defendant asserts that these materials were exculpatory, but he has failed to show how these materials, related to other clients, would have had any exculpatory value. Even assuming these documents showed that defendant was fully honest and forthright with these clients, and even modified their contracts with their consent, such that he could borrow any amounts they recovered in their civil actions consistent with the terms he claims he made in the Dybas contract, they are not exculpatory because they do not make it more probable that defendant made the modifications to Dybas's contract and that Dybas had signed it. Indeed, not only would the evidence not be exculpatory, it also would not be admissible for the purpose defendant seeks. Defendant's position clearly runs afoul of MRE 404(b)(1), which prohibits evidence of other acts to prove conformity therewith. See *Felton*, 326 Mich App at 429. MRE 404(b)(1) provides that "[e]vidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1) applies to all other acts, "good" or "bad."

Accordingly, defendant's right to due process was not violated because, contrary to his view, there is nothing to suggest that the sought-after materials possibly could have been exculpatory. Therefore, the trial court did not err by denying defendant's request to compel the production of these materials pertaining to other clients. i.e., clients other than Dybas, Robinson, or Damm.

## II. DOCKET NO. 348477

Defendant argues that the trial court erred when it denied his postconviction motion for Det. Brian Berthiaume to appear at court and explain why he should not be held in contempt for failing to comply with a subpoena that was served on him during trial. We disagree.

---

[7] The court, however, did not preclude defendant from seeking these materials through a subpoena.

The trial court declined to address the substantive merits of the motion and instead denied it on procedural grounds. The court relied on MCR 7.208(B), which provides in part:

> (B) Postjudgment Motions in Criminal Cases.
>
> (1) No later than 56 days after the commencement of the time for filing the defendant-appellant's brief as provided by MCR 7.212(A)(1)(a)(iii), the defendant may file in the trial court a motion for a new trial, for judgment of acquittal, to withdraw a plea, or to correct an invalid sentence.

In interpreting court rules, this Court applies the rules of statutory construction. *People v Martinez*, 307 Mich App 641, 647; 861 NW2d 905 (2014). "If the language of the court rule is clear and unambiguous, judicial construction is normally neither necessary nor permitted. Thus, the unambiguous language of court rules must be enforced as written." *Id*. (quotation marks and citation omitted).

The plain and unambiguous language of MCR 7.208(B)(1) allows for only certain motions to be filed in the trial court once an appeal has been filed with this Court. The rule says that a "defendant may file in the trial court a motion for a new trial, for judgment of acquittal, to withdraw a plea, or to correct an invalid sentence." Contrary to defendant's unsupported assertion, there is nothing in the court rule to allow for other types of motions to be filed and heard by the trial court while a case is pending at the Court of Appeals. As such, the clear and unambiguous language of the court rule must be enforced. Accordingly, defendant's motion for Det. Berthiaume to show cause why he should not be held in contempt was not properly filed in the trial court because that type of motion was not included in the list of acceptable motions in MCR 7.208(B)(1). Therefore, the trial court did not err by declining to address the merits of the motion and denying the motion on procedural grounds.

Moreover, if the motion were to be evaluated on its merits, the trial court would have been required to deny it as a matter of law because the subpoena was fatally defective. The record shows that, contrary to defendant's assertion that the subpoena had been signed by the trial court, the subpoena was signed by attorney Robert Dunn.[8] While the trial court did sign a subpoena for defendant, it was to compel attorney Joseph Pergande to appear and testify at trial as a defense witness—it was not the signed subpoena that was given to Det. Berthiaume.

MCR 2.506(B)(1) states that "[a] subpoena signed by an attorney of record in the action or by the clerk of the court in which the matter is pending has the force and effect of an order signed by the judge of that court." Because the subpoena at issue was not signed by an attorney of record, it did not have the force and effect of an order signed by the judge.[9] There would be no need to have Det. Berthiaume appear to explain why he did not comply with a fatally defective subpoena,

---

[8] Defendant had requested Dunn's assistance because defendant's ability to practice law had been suspended.

[9] This is presumably why the police department and Bay City treated the subpoena as a request under the Freedom of Information Act instead.

and the trial court could not have found Det. Berthiaume in contempt of court as a matter of law. Accordingly, the trial court would have been required to deny the motion on its merits.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel