*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 11, 2021

Plaintiff-Appellee,

v

No. 351118
Kent Circuit Court
LC No. 18-009310-FH

KIYEL JUSTIN JOHNSON,

Defendant-Appellant.

Before: REDFORD, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree home invasion, MCL 750.110a(3), possession of burglar's tools, MCL 750.116, and two counts of assaulting, resisting, or obstructing a police officer (resisting arrest), MCL 750.81d(1). The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 8 to 30 years for the home invasion conviction, 3 to 20 years for the possession of burglar's tools conviction, and 2 to 4 years for each of the resisting arrest convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Ethel Doyle (Doyle), age 87, lived alone in her Kentwood home. William Long (William) and Karen Long (Karen) lived directly across the street and could see Doyle's house from their front window. On the evening of September 15, 2018, at about 5:00 p.m., Karen saw a man whom she later identified as defendant enter Doyle's backyard. Doyle was not at home at the time. A few minutes later, Karen saw defendant looking out of Doyle's front window from inside the house. She called 911, and she and William then followed defendant to a restaurant. Karen called 911 again to provide an update regarding defendant's whereabouts. Officers from the Kentwood Police Department responded and located defendant at the restaurant. Officer Nathan Turmell testified that defendant struggled with and refused to obey the commands of the arresting officers. When he searched defendant, Officer Turmell found several pieces of jewelry, including Doyle's wedding ring. Officers also found a knife and two screwdrivers inside defendant's backpack.

On the scheduled morning of trial, the trial court called defendant's case to proceed with jury voir dire. Immediately, and for the next 15 minutes, defendant began speaking on various

topics regarding the court's alleged inability to prosecute him without his consent. Among other statements, he repeated, approximately 20 times, a variation on the phrase, "I do not consent to proceed," stating that he was in court as an "executor and beneficiary," not a defendant, and that he wanted to settle the "subrogation" issue. He also claimed to appoint the judge and prosecutor as "trustees" in this matter, and requested that he be allowed to examine the prosecutor concerning her law license. The trial court warned defendant twice that if he did not cease his interruptions, it would remove him from the courtroom. Defendant persisted nonetheless and continued to call into question the trial court's authority. The trial court then removed defendant from the courtroom for the duration of voir dire. Defendant was placed in a holding cell with access to the courtroom's audio.

After defendant was removed, the prosecution informed the trial court of its intent to introduce other-acts evidence under MRE 404(b), relating to two prior incidents in which defendant had committed a home invasion against an elderly person and had stolen jewelry. In moving for the admission of that evidence, the prosecution contended that these "two prior incidents of home invasion . . . demonstrated a very similar common plan and scheme used by the defendant." Citing two Grand Rapids Police Department incident reports, the prosecution argued:

> Essentially, in both of those reports the defendant was involved in a home invasion incident. In both of the reports the defendant was stealing jewelry among other things. Another similarity that shows a common scheme used by the defendant as it relates to the current case, as well as the 2012 case, in both of those incidents, the victims were elderly. In the current case that'll be going to trial, the victim was, I believe, 86 years old at the time of the incident. And in 2012, the victim in that was 90 years old at the time of the incident. In that case—in both incidents, the defendant enters the home, neighbors then see the defendant exit the home and he is later found with jewelry on his person or in his backpack that belonged to those elderly homeowners. He was also found with jewelry in the 2010 case that was taken from that home invasion. And your Honor, I believe and submit to the Court that it would proper to use those incidents to show the defendant's common plan or scheme because of the similarities between those and the current case that will be going to trial.

Defendant, who had invoked his right to represent himself, did not substantially object, although his stand-by counsel objected on his behalf. The trial court granted the prosecution's motion.

During trial, the prosecution presented four witnesses who testified about various aspects of a 2012 home invasion of which defendant was convicted.[1] Following the close of the prosecution's proofs, defendant moved to "strike" the other-acts testimony. The trial court denied the motion.

Defendant testified on his own behalf and admitted to having committed home invasions in the past; however, defendant stated that in this instance he had merely taken jewelry from a

---

[1] The prosecution did not introduce evidence of the 2010 home invasion.

backpack that another man had left on a fence near the restaurant where he was arrested, and denied breaking into Doyle's home.

Defendant was convicted and sentenced as described. This appeal followed.

## II. OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion when it admitted the prosecution's other-acts evidence. We disagree. This Court reviews for an abuse of discretion preserved claims of evidentiary error. See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted).

Generally, all relevant evidence is admissible. MRE 402; *People v Vandervliet*, 444 Mich 52, 60-61; 508 NW2d 114 (1993). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Vandervliet*, 444 Mich at 60. Irrelevant evidence is not admissible. See MRE 402; *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996). Relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403; see also *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *Vandervliet*, 444 Mich at 74, our Supreme Court explained that other-acts evidence is admissible if it complies with a three-part test: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value cannot be substantially outweighed by unfair prejudice. To have a proper purpose, "[t]he evidence must be relevant to an issue other than propensity." *Id*. "Relevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *Id*. at 65.

The proponent of evidence bears the burden of establishing relevance and admissibility. *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006). Other-acts evidence must be "logically relevant to show that the charged act occurred where the uncharged misconduct and the

charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000).

The trial court did not abuse its discretion when it admitted the challenged other-acts evidence. See *Vandervliet*, 444 Mich at 74. The prosecution offered the testimony for a proper purpose: to demonstrate a common plan or scheme. MRE 404(b)(1). The prosecution argued that, in both the current case and the 2012 home invasion, defendant stole jewelry from an elderly person who lived alone. In that case, as in this, defendant possessed two screwdrivers when he was apprehended. The other-acts testimony at trial concerning the 2012 home invasion incident established sufficient common features to establish a rational inference of a common plan or scheme. See *Sabin*, 463 Mich at 63-65.

Defendant argues that jewelry is a commonly stolen item in home invasions and that "[t]he prosecutor merely stated the listed phrases listed in MRE 404(b) without explaining their relevance and satisfaction of the rule." Although it is likely true that jewelry, as a high-value, portable item, has been stolen in many home invasions, the prosecution did indeed explain why the other-acts evidence was appropriate to show a common plan or scheme.

Defendant's argument that the other-acts evidence was not relevant also lacks merit. Defendant cites *People v Felton*, 326 Mich App 412; 928 NW2d 307 (2018), for the proposition that testimony as to commonplace and indistinctive acts that demonstrate elements of a crime, instead of demonstrating how a crime was committed, does not constitute proper other-acts evidence. See *id*. at 427-429. *Felton* does not aid defendant's argument. Testimony concerning the 2012 home invasion established that defendant had also chosen an elderly victim who lived alone, was observed by neighbors leaving the home, and was apprehended in possession of jewelry from the home and two screwdrivers. This evidence demonstrated substantial similarities in *how* defendant committed both offenses, instead of merely the elements of the offenses themselves. By contrast, in *Felton* (a drug distribution case) the other-acts evidence was merely that the defendant possessed drugs and that someone drove him around in a car while he did so. *Id*. at 426-427. The trial court did not err by determining that the other-acts evidence was relevant.

The probative value of the evidence was also not substantially outweighed by unfair prejudice. See *Blackston*, 481 Mich at 462. Although four witnesses testified regarding the 2012 home invasion, these witnesses testified for a total of approximately 15 minutes of a trial that lasted four days. The witnesses' testimony was also not needlessly cumulative. *Id*. Additionally, the evidence, especially the testimony in regard to the two screwdrivers, directly related to a common scheme that could reasonably aid a jury in finding that defendant committed this home invasion, which was directly at issue because defendant denied that he had committed the offense. Moreover, although defendant failed to request a limiting instruction, the trial court sua sponte gave such an instruction, instructing the jury that, while it could consider the similarities between the two events, it was not permitted to convict defendant merely because it determined that he had committed the 2012 home invasion. This instruction limited the potential for the others-acts evidence to confuse or mislead the jury. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) (stating that jurors are presumed to follow their instructions). Accordingly, the trial court did not abuse its discretion when it admitted the other-acts evidence.

Further, even if the trial court had abused its discretion when it admitted the other-acts evidence, it is not more probable than not the outcome of the trial would have been different if the other-acts evidence had not been admitted. See *Douglas*, 496 Mich at 565-566. Two witnesses observed defendant inside and outside Doyle's house, and defendant was apprehended shortly thereafter with items stolen from Doyle's house and tools that could have aided a burglary. See *People v Olson*, 65 Mich App 224, 229; 237 NW2d 260 (1975) (noting that a screwdriver may be a burglary tool for the purposes of possession of burglar's tools).

### III. DEFENDANT'S REMOVAL FROM COURTROOM

Defendant also argues that the trial court violated his due-process and Confrontation Clause rights when it removed him from the courtroom for the entirety of voir dire. We disagree.

The Sixth Amendment to the United States Constitution provides in relevant part that the accused has the right "to be confronted with the witnesses against him." US Const, Am VI. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353, 356 (1970). This guarantee is incorporated to the states via the Fourteenth Amendment's guarantee of due process of law. *Id*. In *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984), our Supreme Court explained:

> A defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected.[2]

However, this right is not absolute. In *Allen*, 397 US at 342-343, the United States Supreme Court held that an accused may be removed from a courtroom by consent or for misconduct. In *Allen*, the defendant had also insisted on representing himself. *Id*. at 339. During voir dire, the defendant questioned a potential juror "at great length," and when the trial court requested that he confine his questions to the prospective juror's relevant qualifications, the defendant argued with the trial court "in a most abusive and disrespectful manner," and threatened the judge. *Id*. at 339-340. After warnings from the trial court, the trial court removed the defendant from the courtroom for the remainder of voir dire. *Id*. The United States Supreme Court upheld the trial court's course of action, stating:

> Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose

---

[2] In Michigan, an accused's right to be present at trial is also codified. MCL 768.3 provides:

> No person indicted for a felony shall be tried unless personally present during the trial; persons indicted or complained against for misdemeanors may, at their own request, through an attorney, duly authorized for that purpose, by leave of the court, be put on trial in their absence.

his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings. [*Id*. at 343.]

The *Allen* Court continued:

It is not pleasant to hold that the respondent Allen was properly banished from the court for a part of his own trial. But our courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal judicial systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality, and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But, if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the Illinois trial judge in this case. The record shows that the Illinois judge at all times conducted himself with that dignity, decorum, and patience that befit a judge. Even in holding that the trial judge had erred, the Court of Appeals praised his "commendable patience under severe provocation." [*Id*. at 346-347.]

In this case, the trial court did not plainly err when it removed defendant from the courtroom during voir dire. See *id*. at 343; see also *Carines*, 460 Mich at 774. As we have described, defendant was extremely disruptive to the voir dire process, showing no interest in actually proceeding with voir dire and engaging in extended, irrelevant (and often nonsensical) monologues concerning "trustees," "subrogation," and the notion that defendant's consent to jurisdiction was required. The trial court warned him twice that it would remove him from the courtroom, yet defendant did not cease his interruptions. Although defendant did not threaten the trial court like the defendant in *Allen* did, he generally showed little to no respect for the trial court's authority and gave no indication that he would be willing to cooperate or alter his behavior. The record reflects that the trial court remained calm and measured throughout the entire episode and remained respectful to defendant. We conclude that the trial court did not plainly err by removing defendant from the courtroom during voir dire. See *Carines*, 460 Mich at 774.

Moreover, defendant's removal from the courtroom did not affect his substantial rights. *Id*. It was his own actions that caused his removal. The trial court listened patiently to his interruptions and speeches and warned him twice before removing him. Defendant was permitted to return to the courtroom in time for opening statements. Defendant was also represented by stand-by counsel during voir dire and for the prosecution's motion to admit other-acts evidence,

which, as discussed, we hold was appropriately granted.  We conclude that the trial court's decision did not negatively impact the integrity or public reputation of judicial proceedings.  *Id.*

Affirmed.


/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Mark T. Boonstra