*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEREMY CHRISTOPHER FALL,

Defendant-Appellant.

UNPUBLISHED
April 15, 2021

Nos. 352351; 352352
Clinton Circuit Court
LC Nos. 2019-010220-FH; 2019-
010272-FH

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals, defendant, Jeremy Fall, appeals as of right his jury-trial convictions of assault with intent to do great bodily harm less than murder or strangulation, MCL 750.84, assault with a dangerous weapon, MCL 750.82(1), and two counts of domestic violence, third offense, MCL 750.81(2); MCL 750.81(5). Because there are no errors warranting reversal, we affirm but remand for the ministerial task of correcting the judgments of sentence.

## I. BASIC FACTS

This case arises out of an altercation among Fall, his aunt Jacqueline Fall, and his then-girlfriend Jessica Hemenway on November 18, 2018. At the time, Fall and Hemenway were living in Jacqueline's house. Jacqueline testified that Fall pointed a B-B gun at her head, swiped at her twice with a knife, scratched and gouged her face, and attempted to stab her with a screwdriver. Hemenway testified that Fall pulled her to the ground and threatened her with a knife. Fall admitted that there was a loud argument, but denied physically assaulting Jacqueline and Hemenway. He believed that both women had gotten together to fabricate the allegations against him.

## II. RIGHT TO PRESENT A DEFENSE

### A. PRESERVATION AND STANDARD OF REVIEW

Fall argues that the trial court deprived him of his constitutional right to present a defense by excluding relevant and admissible other-acts testimony. To preserve the issue of whether a trial

-1-

court's evidentiary ruling denied a defendant of his or her constitutional right to present a defense, the defendant must raise the issue in the trial court. See *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004). "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Fall did not argue before the trial court that the testimony was admissible under MRE 404(b), nor did he argue that its exclusion denied him the right to present a defense. Consequently, our review is for plain error affecting Fall's substantial rights. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). In order establish plain error warranting reversal, the defendant must show: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A showing of prejudice, i.e., "that the error affected the outcome of the lower court proceedings," is generally required to satisfy the third element. *Id*. The defendant bears the burden to establish prejudice. *Id*. Even if a defendant satisfies these requirements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

## B. ANALYSIS

A fundamental element of due process is a criminal defendant's right to present a defense. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). "But this right is not absolute: the accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

In seeking admission of the other-acts testimony in the trial court, Fall represented that when he got out jail or prison "he lived with her and she paid him for sex with her" and that "her husband died, and he believes it's because she poisoned him with antifreeze over a period of time." He never identified whether he was referring to Jacqueline or Hemenway. Nevertheless, he argued to the trial court that the other-acts would show motive for fabrication of the charges. The trial court precluded admission of the testimony, stating "that won't be coming in." On appeal, Fall argues that the testimony was relevant and admissible under MRE 404(b).

Exclusion of the testimony was not plain error. "It is a deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Felton*, 326 Mich App 412, 425; 928 NW2d 307 (2018) (quotation marks and citation omitted); MRE 404(b). However, MRE 404(b) permits admission of other-acts evidence for non-propensity purposes, including "proof of motive." Mechanical recitation of a proper purpose for other-acts evidence, however, is insufficient to justify its admission under MRE 404(b). *Felton*, 326 Mich App at 425-426. Instead, to be admissible, the proponent of the evidence must show that the other-acts evidence is offered for a proper purpose, relevant to a fact of consequence at the trial, and that its probative value is not substantially outweighed by the danger of unfair prejudice. *People v Dobek*, 274 Mich App 58, 85; 732 NW2d 546 (2007). It is the burden of the trial court to "vigilantly weed

out character evidence that is disguised as something else." *Felton*, 326 Mich App at 426 (quotation marks and citation omitted).[1]

Here, Fall recited a proper purpose of the other-acts evidence, i.e., that it would show proof of motive on the part of one (or both) of his accusers to fabricate the charges against him. Yet, the remainder of his argument is that the testimony is relevant and admissible under MRE 404(b). He makes no effort to support his claim with citation to pertinent legal authority and engages in no analysis of the facts so as to establish his claim. Rather, he directs this Court to the trial court's failure to articulate a rationale for precluding the testimony. The trial court's failure to state its reasoning, however, does not relieve Fall of his responsibility to support his claims on appeal.[2] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Consequently, Fall's unsupported claim that the evidence is relevant and admissible under MRE 404(b) is abandoned and we need not consider it.[3] Moreover, because Fall has failed to show that the evidence was relevant and admissible, his claim that the exclusion of the testimony deprived him of his constitutional right to present a defense also fails. See *Solloway*, 316 Mich App at 198.

---

[1] The prosecution suggests that the proposed testimony was inadmissible under MRE 404(b) because MRE 404(b) generally applies to the prosecution's efforts to admit other-acts evidence. However, MRE 404(b)(1) applies to the admissibility of evidence of the other acts of any person, not just the other acts of a defendant. *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 570 (1995).

[2] Reversal is not warranted in cases where the trial court reached the right result for the wrong reason. *People v Biller*, 239 Mich App 590, 595 n 4; 609 NW2d 199 (2000). Similarly, we will not reverse where the trial court reached the right result but failed to articulate the reason behind its decision.

[3] In any event, based on the offer of proof, it is clear that the proffered testimony is not admissible under MRE 404(b). First, Fall did not identify the woman who allegedly paid Fall for sex and murdered her husband. Second, as to the murder allegation, Fall only asserted that he "believed" that she murdered her husband by poisoning him with antifreeze. Such speculative testimony is impermissible. Finally, even if the murder allegation was based on more than Fall's belief, Fall has done nothing to link his knowledge of a murder to an actual motive to fabricate the charges against him. There is nothing to show that the alleged murderer was aware that Fall believed she killed her husband and that she had reason to believe fabricated allegations against him would somehow benefit her. The same is true for the contention that Fall was paid to have sex with her. Without a link between the other-acts evidence and the proffered motive, all that is left is an impermissible character inference, i.e., that the woman is a bad person who murdered her husband and paid Fall for sex. Such evidence is inadmissible under MRE 404(b). And, even if such evidence was relevant to proof of motive, the probative value of the evidence would be substantially outweighed by the danger of unfair prejudice.

### III. REFERENCES TO DEFENDANT'S INCARCERATION

### A. STANDARD OF REVIEW

Fall next argues that he was deprived of his constitutional right to a fair trial because there were several references to the fact that he was and had previously been incarcerated. Because Fall did not object to the references below, we review this unpreserved evidentiary error for plain error affecting Fall's substantial rights. See *Carines*, 460 Mich at 763.

### B. ANALYSIS

Criminal defendants have a due-process right to a fair trial, including the right to be presumed innocent. *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010). The presumption of innocence requires the guilt of a defendant to be "determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id.* (quotation marks and citation omitted). Generally, a prosecutor's reference to a defendant's incarceration is inadmissible. P*eople v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983).[4]

Here, although there were multiple references to Fall's incarceration, only one was brought up by the prosecution. On redirect examination, the prosecutor asked Jacqueline about a letter Fall had sent her "from the jail." Jacqueline testified that in the letter Fall told her that she "should drop the case, drop everything, say that I lied, and that I should put my house up to bond him out." He also offered her approximately $100,000 to not testify. She recounted that in the letter, Fall wrote "I hope that you can find it in your heart to drop these charges, and to trust me again. I'm sorry for being such an asshole." Although a prosecutor's intentional elicitation of testimony regarding a defendant's previous incarceration constitutes error, *People v McGee*, 90 Mich App 115, 116-117; 282 NW2d 250 (1979), "an isolated or inadvertent reference to a defendant's prior criminal activities will not result in reversible prejudice," *People v Wallen*, 47 Mich App 612, 613; 209 NW2d 608 (1973). This comment, standing alone, is insufficient to warrant reversal.

Another reference to Fall's incarceration occurred during the prosecutor's direct examination of Jacqueline. She testified that Fall was "crying saying he didn't want to go back to prison." The prosecution did not elicit this testimony, nor did he follow up on it by asking questions related to the incarceration in question. Although improper, this brief comment on Fall's prior incarceration—even when considered in connection with the prosecutor's reference to Fall's incarceration—does not amount to plain error affecting Fall's substantial rights because the jury heard the same information from the defense lawyer as part of the defense strategy.

---

[4] Cases by this Court decided before November 1, 1990 are not binding. MCR 7.215(J)(1). Although this Court is not " 'strictly required to follow uncontradicted opinions from this Court decided prior to November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases.' " *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019), quoting *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

The record reflects that the majority of the reference to Fall's incarceration were elicited by Fall's defense lawyer. Fall testified that when he wrote the letter, he asked Jacqueline to drop the charges because she was mad at him and wanted to "keep [him] locked up." He added that he felt "that it wasn't worth lying to put me in prison over me not living up to her expectations." He thought that Jacqueline and Hemenway had gotten together to get him locked up. Fall's lawyer also briefly brought up Fall's incarceration as a preface to a question about Fall's relationship with Jacqueline, commenting "there was testimony that you left the house and went to jail." Review of the record shows that the defense strategy was to present testimony that Jaqueline and Hemenway conspired together to fabricate charges against Fall in order to get him locked up and that, in an effort to placate Jaqueline, Fall wrote her a letter from jail where he essentially apologized for "being an asshole" and asked her to drop the charges. The testimony related to Fall's incarceration was necessary to explain the admissions he made in the letter. And, in any event, an appellant "may not benefit from an alleged error that the appellant contributed to by plan or negligence." *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003). Thus, we also decline to reverse based upon the references to Fall's incarceration that were elicited by his lawyer.

Similarly, we do not find that Fall's lawyer's performance was constitutionally deficient based on his failure to object to the references to Fall's incarceration and his failure to request a curative instruction. This Court will not substitute its judgment for that of the defendant's lawyer regarding matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Decisions as to what evidence to present are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Further, declining to raise objections to evidence can also be sound trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Here, Fall's lawyer may have decided not to object to the prosecution's reference to Fall being in jail because he was aware that the same information would be brought up during his case-in-chief when he questioned Fall regarding the contents of the letter Fall wrote to Jacqueline. That a strategy does not succeed does not render its use ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

## IV. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Fall contends that he was denied his right to a fair trial by prosecutorial misconduct. This Court reviews de novo issues of prosecutorial misconduct to determine whether the defendant was denied a fair and impartial trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. *Dobek*, 274 Mich App at 64. However, unpreserved prosecutorial misconduct claims are reviewed for plain error affecting the defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

### B. ANALYSIS

During his opening statement, the prosecutor told the jury that it was his "job to prove to you beyond a reasonable doubt that each of the things that we said happened did in fact happen, and it's—that's a burden and a job that I wholeheartedly accept in this case, *because justice needs to be done for the victims here*, they should not have had to go through this, they should not have

had to fear for their life." (Emphasis added). Fall also asserts that during closing argument, the prosecutor improperly informed the jury that Jacqueline and Hemenway were telling the truth and that he had no doubts about what the evidence showed. The prosecutor argued:

> The truth is easy to remember because it's the truth and it doesn't change. If this were to [be] fabricated—which I believe is what the defense is going to argue, stuff would change over time, there'd be discrepancies, there'd be issues with how the sequence of events happened, how the case was brought forward between the two of them. It's hard to keep two people on the same page when you're making the story up, but we're on the same page here, you heard that yesterday, because it's the truth, *at least as far as I can tell*. And again, the truth is easy to remember.
>
> \* \* \*
>
> Again, *the evidence, I believe, firmly meets every one of those elements* beyond a reasonable doubt. *You may have doubts, I don't*, but you may have doubts, about what the evidence showed. But they have to be reasonable. [Emphasis added.]

The prosecution concedes that the above comments were inappropriate, but argues that they were not so serious as to require reversal. We agree that the comments were inappropriate. A prosecutor is not free to "inject issues into a trial that are broader than the defendant's guilt or innocence." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). Appealing to the need to deliver justice for the victims in a case, therefore, is not proper. Further, a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). The prosecutor's comments that he had *no doubts* that the elements of the crime were committed and his assurance that, in his view, both witnesses were telling the truth, is a textbook example of improper prosecutorial comments on witness credibility.

However, reversal is not required because any prejudice could have been alleviated by a timely curative instruction. *Bennett*, 290 Mich App at 476; *People v Ullah*, 216 Mich App 669, 682; 550 NW2d 568 (1996). And, although a specific curative instruction was not given, the trial court instructed the jury that it had to decide the case based upon the evidence, which consisted of the testimony and the exhibits. The court expressly instructed the jury that "[t]he lawyers' statements and the lawyers' arguments, and the lawyers' comments and objections are not evidence." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Thus, although the prosecutor's comments were inappropriate, any unfair prejudice was alleviated by the instructions actually given. See *People v Parker*, 288 Mich App 500, 512; 795 NW2d 596 (2010) ("Moreover, to the extent that the prosecutor may have stepped into argument beyond what the evidence properly allowed, the trial court's instructions that the jury decide the case solely on the basis of the evidence and that the statements of counsel were not evidence should have cured any prejudice."); *Ullah*, 216 Mich App at 682-683 ("We are also satisfied that the court's instruction to the jury that the arguments of counsel were not evidence dispelled any potential prejudice with respect to all the alleged instances of prosecutorial misconduct.").

In a related argument, Fall argues that his trial lawyer was ineffective because he failed to object to the prosecutorial misconduct. We agree that by failing to object to the prosecutor's improper comments, Fall's lawyer's performance was deficient. See *Unger*, 278 Mich App at 242. However, Fall cannot show that "there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted" him. See *id*. Again, any possible prejudice caused by the comments was alleviated by the trial court's instruction that the lawyers' statements, comments, and arguments were not evidence.

Additionally, the jury verdict reflects that it was able to disregard the prosecutor's improper comments and decide the case based upon the evidence. The jury convicted Fall of assaulting Jacqueline with intent to do great bodily harm less than murder by strangulation and domestic violence and one count of assault with a dangerous weapon, but was unable to reach a verdict on two counts of assault with a dangerous weapon. The jury convicted Fall of committing domestic violence against Hemenway, but acquitted him of assaulting her with a dangerous weapon. Thus, notwithstanding the prosecutor's improper arguments, it appears that the jury was able to independently evaluate the evidence, including the witnesses' credibility, and reach its own conclusion as to whether the elements of each crime were proven beyond a reasonable doubt. Stated differently, there is no indication that the prosecutor's improper comments were so impactful that the jury ignored the jury instructions to decided the case based upon the evidence and instead based its decision on the prosecutor's assurances during closing argument that the witnesses were truthful and that he had no doubt that the elements of the crimes had been established beyond a reasonable doubt. Fall, therefore, has not shown that his lawyer's deficient performance prejudiced him, so he is not entitled to relief on his claim of ineffective assistance.

## VI. JUDGMENT OF SENTENCE

Finally, Fall argues that the judgment of sentence incorrectly states that he was convicted of assaulting a pregnant individual. Fall's judgments of sentence states that Fall was convicted of the crime "Domestic violence Dom Viol Know Aslt Preg I." The prosecutor argues that remand for correction of the judgment of sentence is not necessary because the judgments of sentence correctly refer to the Prosecuting Attorneys Coordinating Council (PACC) codes of 750.812 and 750.814, which correspond to domestic violence, third offense, under MCL 750.81(2) and MCL 750.81(5). However, the mere fact that the PAAC codes are correct does not mean that the reference to a domestic assault on a pregnant individual was also correct and proper. Fall was not convicted of domestic assault against a pregnant individual. Consequently, the judgment of sentence must be amended to reflect the charges he was actually convicted of. We, therefore, remand for the ministerial task of deleting the language indicating that Fall domestically assaulted a pregnant individual.

Affirmed, but remanded for correction of the judgments of sentence. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

-7-