*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SEAN MICHAEL PACH,

        Defendant-Appellant.

UNPUBLISHED
November 17, 2022

No. 359110
Delta Circuit Court
LC No. 20-010166-FH

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Defendant, Sean Michael Pach, appeals as of right his jury-trial convictions of one count of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); MCL 750.81d(7)(b)(*i*),[1] and one count of assaulting, resisting, or obstructing a paramedic, MCL 750.81d(1); MCL 750.81d(7)&b)(*ix*).[2] For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On April 18, 2020, three people observed Pach falling, getting up, and stumbling toward a major highway. The witnesses believed that he was intoxicated and were unsure if he would be a harm to himself, so they both called 9-1-1. All three witnesses left after emergency services arrived.

In response to the calls, a police officer and a paramedic attempted to help Pach. The officer arrived in a marked police car and identified himself as an officer when he approached Pach. At the time, Pach was sitting on a flatbed trailer. The officer testified that he could smell alcohol when he was near Pach, that Pach's eyes were "glossy" and "droopy," and that he was

---

[1] MCL 750.81d(7)(b)(*i*) provides that the term "person," includes a police officer.

[2] MCL 750.81d(7)(b)(*ix*) provides that the term "person," includes "[a]ny emergency medical service personnel described in . . . MCL 333.20950." A paramedic is one of the emergency medical service personnel described in MCL 333.20950.

slurring his words. Pach told him that he had had ten beers and that he was going to go home, but he would not provide the officer with his address. The paramedic arrived in an ambulance and was wearing a "Rampart uniform shirt," a badge, a radio, and a pager. He testified that he smelled "presumed alcohol" on Pach and that when he asked Pach questions about how he was feeling, Pach became agitated. Because Pach did not answer his questions, the paramedic was unable to determine if Pach would be safe if he were left alone.

While the paramedic was questioning him, Pach stood up and tried to walk away. However, as soon as he got up, he stumbled and fell forward. The officer and the paramedic caught him before he hit the ground. At that point, the officer determined that Pach would be unable to get home by himself. Although the officer and the paramedic tried to get Pach to sit down, he kept trying to walk away. They also tried to walk him back to the flatbed trailer, but he tensed his muscles and fought them. At one point, Pach hit the officer in the chest and shoulder with an elbow. He also got "handsy" and threw his arms at the paramedic, grabbed the paramedic, and pushed him away. Eventually, he used his elbow to hit the paramedic between his shoulder and head. The officer ordered Pach to stop resisting them and to stop assaulting them, but Pach elbowed them again. Pach turned to look at the officer and then tensed his muscles. Believing that Pach was going to try and elbow him again, the officer decided to take Pach to the ground. While the officer and the paramedic were attempting to control Pach's arm, Pach continued to tense his muscles. As a result, they used force to get his arms behind his back.

At trial, Pach testified that he was sitting on the flatbed trailer to regain his composure before continuing to his residence. He explained that he had previously consumed six or twelve beers and was having difficulty getting home. Pach recalled the officer—whom he knew was a police officer—pulling up in his marked police car and approaching him on foot. According to Pach, the officer told him about the 9-1-1 calls, but did not tell him that he was under arrest or that he was being taken into protective custody. Pach testified that he did not need any help from the officer, and he believed that he made that clear by standing up and heading toward his residence. Pach stated that after he took approximately two steps, the officer tackled him to the ground, pinned him on his stomach, and told him to stop resisting. Pach said he was not resisting; he was just trying to move his arm. Pach had no recollection of the paramedic being present during the incident.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Pach first argues that there was insufficient evidence to sustain his convictions because, under the circumstances, he had a common-law right to resist the officer and the paramedic's illegal conduct. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). Because the standard of review is deferential, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lymon*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 4 (quotation marks and citation omitted).

## B. ANALYSIS

Pach was convicted of assaulting, resisting, or obstructing a police officer and a paramedic. The elements for both convictions are set forth in MCL 750.81d(1). To convict a defendant of assaulting, resisting, or obstructing a police officer, the prosecution must prove that: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted); MCL 750.81d(1). Moreover, because MCL 750.81d(1) did not abrogate the common-law right to resist illegal police conduct, the prosecution must also establish that the police officer's actions were lawful. *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012); see also *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014) ("the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d"). Pach was also convicted of assaulting, resisting, or obstructing a paramedic. The elements of that offense are (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a paramedic, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a paramedic performing his or her duties. MCL 750.81d(1).[3]

On appeal, Pach challenges the sufficiency of the evidence as it relates to the lawfulness of the officer's and the paramedic's actions.[4] To prove the lawfulness of an officer's actions, the prosecution must prove that the officer "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1(4). Likewise, the jury was instructed that to prove the lawfulness of the paramedic's actions, the prosecution had to prove

---

[3] MCL 750.81d(7)(b)(*ix*) provides that the term "person," includes "[a]ny emergency medical service personnel described in . . . MCL 333.20950." A paramedic is one of the emergency medical service personnel described in MCL 333.20950.

[4] There was sufficient evidence that Pach knew or had reason to know that the officer and the paramedic were performing their lawful duties. Indeed, Pach admitted that he knew the officer was a police officer. And, although he had no recollection of the paramedic's presence, the record supports an inference that he had reason to know that the paramedic was a person performing lawful duties because the paramedic arrived in an ambulance, was wearing a uniform identifying himself as medical personnel, and asked questions regarding Pach's health. Additionally, there was substantial evidence showing that Pach resisted, obstructed, or assaulted the officer and the paramedic, including the testimony that he elbowed both multiple times, pushed the paramedic, tensed his arms to prevent himself from being handcuffed, and ignored the commands to stop resisting and assaulting the officer and the paramedic.

that the paramedic "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1(4).

The prosecution presented sufficient evidence to support a finding that the officer gave Pach a lawful command and that he was otherwise performing a lawful act. The officer responded in his lawful capacity as a community caretaker. See *People v Slaughter*, 489 Mich 302, 315; 803 NW2d 171 (2011) (stating that courts have included the removal of an intoxicated person from the street as a police function within the meaning of the community-caretaking function). Additionally, under the Mental Health Code, MCL 330.1001 *et seq.*, peace officers are required to take "an individual who appears to be incapacitated in a public place . . . into protective custody." MCL 330.1276(1). " 'Incapacitated' means that an individual, as a result of the use of alcohol or other drugs, is unconscious or has his or her mental or physical functioning so impaired that he or she either poses an immediate and substantial danger to his or her own health and safety or is endangering the health and safety of the public." MCL 330.1100b(10). Here, the officer responded to a report of a potentially intoxicated individual. Upon arrival, he observed that Pach appeared to be intoxicated and that he smelled of alcohol. Subsequently, when Pach tried to walk away, he only made it two steps before stumbling and falling forward. At that point, the officer believed that Pach would be unable to make it home safely on his own. His actions—catching Pach before he fell and attempting to get him to sit back down—were not unlawful. Moreover, after Pach started physically resisting his efforts to aid him, including by repeatedly striking both the officer and the paramedic with his elbow, the officer's decision to restrain him was also lawful.

Similarly, the paramedic was acting in his capacity as a paramedic. He responded to the scene to aid Pach. The paramedic testified that if someone does not want his assistance, the person must answer his questions appropriately and sign a refusal form. Pach, however, failed to answer the questions and kept saying that he wanted to go home. Instead, as noted above, he was unable to take more than two steps before falling. The paramedic was not acting unlawfully when he helped stop Pach from hitting the ground and when he tried to convince him to sit down so he would not hurt himself. Moreover, viewed in the light most favorable to the jury verdict, there was sufficient evidence to find that the paramedic, exercising his professional judgment, lawfully determined that Pach would not be safe on his own. See MCL 333.20969 (providing that emergency medical services personnel must abide by the decision of the patient to refuse treatment or transportation unless "emergency medical services personnel, exercising professional judgment, determine that the individual's condition makes the individual incapable of competently objecting to treatment or transportation . . . .").

In sum, there was sufficient evidence to support both convictions.

### III. OTHER-ACTS EVIDENCE

### A. STANDARD OF REVIEW

Pach argues that the trial court abused its discretion when it admitted other-acts evidence under MRE 404(b) to prove his knowledge or lack of mistake or accident. Further, he contends that the trial court should have excluded the other-acts evidence under MRE 403. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). A trial court abuses its discretion when its decision is

"outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citations omitted).

## B. ANALYSIS

"It is a deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Felton*, 326 Mich App 412, 425; 928 NW2d 307 (2018) (quotation marks and citation omitted). "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Id*. (quotation marks and citation omitted). Consequently, MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." *Id*. In order to be admissible under MRE 404(b), the evidence must be offered for a purpose other than propensity, the evidence must be relevant, and the probative value of the evidence must not be outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

In this case, trial court allowed the prosecution to introduce evidence showing that on May 2, 2019, Pach was intoxicated at a store and, when law enforcement arrived and attempted to escort him from the premises, Pach became resistant and assaulted the officers. The prosecution articulated several allegedly non-propensity purposes for the evidence, and the trial court allowed its admission to show knowledge and absence of mistake or accident. On appeal, Pach argues that the court abused its discretion by admitting the evidence because it was improper character evidence, was not relevant for a non-propensity purpose, and any marginal probative value that it arguably had was substantially outweighed by the danger of unfair prejudice. We agree.

"The mechanical recitation of a permissible purpose, without explaining how the evidence relates to the recited purpose, is insufficient to justify admission under MRE 404(b)." *People v Denson*, 500 Mich 385, 400; 902 NW2d 306 (2017) (quotation marks and citation omitted). Instead, a trial court must "vigilantly weed out character evidence that is disguised as something else." *Felton*, 326 Mich App at 426 (quotation marks and citation omitted). Here, the prosecution contended that the May 2, 2019 altercation was admissible to show Pach's knowledge that when he becomes intoxicated in a public place and is approached by law enforcement, he becomes agitated, resistive, and assaultive toward the law enforcement officers. In other words, the prosecution asserts that the evidence is admissible to show that Pach was aware of his propensity to become resistive and assaultive toward law enforcement when he was intoxicated in a public space. The prosecution's reclassification of the evidence that the defendant was aware of his bad character trait and that he would act in conformity with it does not change the nature of the evidence: it is impermissible propensity evidence that is excluded under MRE 404(a) and is not admissible under MRE 404(b)(1). Accordingly, the trial court abused its discretion by admitting the May 2, 2019 incident to show that Pach was aware of his propensity to resist the police if he was approached by them while he was intoxicated in a public place.

Next, the prosecution asserts that the evidence was admissible to show absence of mistake or accident. Specifically, the prosecution argues that because of the May 2, 2019 incident, Pach knew or should have known what a law enforcement officer looked like when performing his or her lawful duties. Although absence of mistake or accident is a proper purpose for other-acts evidence, such evidence must also be relevant under MRE 402 and not precluded under MRE 403. *VanderVliet*, 444 Mich at 74.

"Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Denson*, 500 Mich at 401-402, quoting MRE 401. Other-acts evidence has probative value if it is truly "probative of something *other* than the defendant's propensity to commit the crime." *Id.* at 402 (quotation marks omitted). "[I]n order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence . . . ." *Id.* at 400. Logical relevance is a pivotal determination in weighing the admissibility of other-acts evidence. *Id.* at 401. To be logically relevant, evidence must be not only material, but also have probative value. *Id.* Other-acts evidence is material if it is related to a fact of consequence in the case, and the pertinent inquiry is whether the fact that the evidence seeks to establish is really at issue. *Id.*

Here, the prosecution contends that the evidence was relevant because it was probative of the fact that Pach knew what a police officer looked like when he or she was wearing his or her uniform. The prosecution asserts that the evidence was also material because when a defendant pleads not guilty to a charged offense, it "puts the prosecution to its proofs regarding all elements of the crime charged." *VanderVliet*, 444 Mich at 78. Nevertheless, the record in this case does not support a determination that Pach's knowledge of what a police officer looked like was really at issue. Pach did not argue that his actions in resisting the officer were the result of a mistake or an accident. Indeed, it was undisputed that the officer arrived in a marked police car, was wearing a police uniform, identified himself as a police officer. At no point did Pach argue that he elbowed the officer and otherwise resisted his assistance because he was unaware that he was striking or resisting a police officer. Although "a defense need not be formally set up to create an issue clearly within the facts," *id.* at 79, a general denial "does not automatically entitle the prosecutor" to a ruling that other-acts evidence is admissible, *id.* at 78-79. Here, given that there was no indication that Pach's actions were the result of a mistake or accident, we conclude that the other-acts evidence was not logically relevant to a non-character purpose.

And, even if it were logically relevant, it should have been excluded under MRE 403. Under MRE 403's balancing test, admissible evidence must be excluded if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Bass*, 317 Mich App 241, 259; 893 NW2d 140 (2016). Here, the probative value of the May 2, 2019 incident was minimal. Again, there was no dispute that Pach knew the officer was a police officer. At no point did he argue that he only resisted the officer's assistance because he did not know or have reason to know that he was resisting a police officer carrying out his or her lawful duties. Instead, he testified that he resisted because the officer unlawfully tackled him to the ground when he tried to walk home. As such, to the extent that the prior incident supports an inference that Pach knew he was engaged in an altercation with a police officer on April 18, 2020, the evidence was only marginally probative and was cumulative to the

otherwise undisputed evidence showing that Pach knew or had reason to know that the officer was a police officer. In contrast, given the similarity between the prior act—intoxication in public leading to Pach fighting with and otherwise resisting law enforcement—the danger that the jury would make the prohibited propensity inference was significant. Thus, even if the evidence was relevant to a proper non-propensity purpose, it should have been excluded because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Although the court abused its discretion by admitting the other-acts evidence, reversal is not warranted. An error is harmless if "after an examination of the entire cause" it does not "affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Under MCL 769.26, "a defendant carries the burden of showing that 'it is more probable than not that the error was outcome determinative.' " *People v Lyles*, 501 Mich 107, 117-118; 905 NW2d 199 (2017), quoting *Lukity*, 460 Mich at 495-496. Further, "[i]n making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Lyles*, 501 Mich at 118 (quotation marks and citation omitted). When evaluating whether the admission of other-acts evidence is harmless "the mere presence of some corroborating evidence does not automatically render an error harmless." *Denson*, 500 Mich at 413.

In this case, an examination of the entire cause shows that, even in the absence of the other-acts evidence, there was substantial untainted evidence to support the jury's verdict. Multiple witnesses observed Pach in an intoxicated state and were concerned for his safety. In response to the 9-1-1 calls, a paramedic and a police officer attempted to provide Pach with aid. While they were talking with him, he attempted to walk away and instead stumbled and fell forward. They caught him before he hit the ground and tried to get him to sit down. He instead resisted by tensing his muscles, pushing at them, and elbowing them repeatedly. Although he contended that the officer tackled him, he admitted that he had consumed six to twelve beers and that prior to the officer's arrival he had stopped to regain his composure. He had no memory of the paramedic being present. In light of his level of intoxication and his inability to recall the presence of the paramedic, the weight of his testimony was significantly lessened. Therefore, on the entirety of this record, we conclude that the erroneous admission of the other-acts evidence was harmless and reversal is not warranted.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel